# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           Case No. 97-4-CR-T-26A

ABRAHAM FIDALGO,

Defendant

# EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582 (C) (1) (A) (i) AMENDED BY THE FIRST STEP ACT OF 2018

> Abraham Fidalgo-Pro-se
> Reg. No.: 21135-018
> Federal Correctional Complex
> FCI Coleman Medium
> P.O. BOX 1032
> Coleman, FL 33521

1

## CERTIFICATE OF INTERESTED PERSONS

Honorable Richard A. Lazzara,
United States District Judge
Sam M. Gibbons United States Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, Florida 33602

Maria Chapa Lopez
United States Attorney
United States Attorney Office
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798

Natalie Hirt Adams
Assistant United States Attorney
United States Attorney Office
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798

## TABLE OF CONTENTS

Table of Citations………………………………………………………… Page 4, 5

Pro-Se Statement…………………………………………………………Page 6

Request for Council………………………………………………… Page 6

Exhaustion of Administrative Remedies……………………………… Page 6

ARGUMENT………………..………………..………………..………………...Page 7


**I.    DEFENDANT'S "EXTRAORDINARY AND COMPELLING" FAMILY CIRCUMSTANCES FALL WITHIN THE ADVISORY U.S.S.G § 1B.1.13 SCOPE AUTHORIZING THE COURT TO REDUCE DEFENDANT'S SENTENCE**……….................... Page 7


**II.   THE § 3553 (A) FACTORS WEIGH IN FAVOR OF DEFENDANT'S IMMEDIATE RELEASE AND UNLIKELINESS OF RECIDIVISM**……………………......Page 16

Conclusion…………………………………………………………….. Page 31

Certificate of Service………………………………… …………………..Page 32

Table of Attachments…………………………………………………….. Page 33

## TABLE OF CITATIONS

**Haines v. Kerner**, 405 U.S. 519, 30L. Ed. 2d 652, 92 S.Ct. 594 (1972).....Page 6

**United States v. Brooker**, Case No.:19-3218-cr, 2020 U.S. App. LEXIS 30605 (2nd Cir. September 25, 2020)....................................................................Page 7

**United States v. Jones**, Case No.: 20-3701, 2020 U.S. App. Lexis 36620 (6th Cir Nov. 20, 2020)..............................................................................................Page 7

**United States v. Gunn**, Case No.: 20-1959, 2020 U.S. App. Lexis 36612 (7th Cir Nov. 20, 2020)...............................................................................................Page 8

**United States v. McCoy**, Case No.: 20-6821, 2020 U.S. App. Lexis 37661 (4th Cir Dec. 2, 2020).................................................................................Page 8

**United States vs. Maumau**, 2020 U.S. Dist. LEXIS 28392 Case No. 2:08-cr-00758-TC-11(D. Utah, February 18, 2020).....................................Page 8

**United States vs. Arruda**, Case No.: 20-10245, 2021 US App. LEXIS 10119 (9th Cir. Apr. 8, 2021) .................................................................................Page 8

**United States vs. Shkambi**, Case No.: 20-40543, 2021 US App. LEXIS 10053 (5TH Cir. Apr. 7, 2021)..............................................................................Page 8

**United States v. Bryant**, Case No.:19-14267)...............................Page 9, 13

**United States v. Booker**, 543 U.S. 221 (2005)................................Page 12

**Rita v. United States**, 551 U.S. 338 (2007)....................................Page 12

**Gall v. United States**, 552 U.S. 38, 49, (2007)................................Page 12

**United States v. Walker**, Case No.: 1:11 CR 270, 2019 U.S. Dist. Lexis 180084 (N.D. Ohio Oct. 17, 2019)........................................................................Page 14

**United States v. Riley**, Case No.: 2:12-cr-62, 2020 U.S. Dist. Lexis 82909 (D. Vermont May 12, 2020)...........................................................................Page 14

**United States v. Martinez**, 2020 U.S. Dist. LEXIS 167652 No. 06 Cr. 591 (LAP) (S.D.N.Y Sept. 13, 2020)..........................................................................Page 14

## TABLE OF CITATION (Continuation)

**United States v. Bartolo Hernandez**, 2020 U.S. Dist. LEXIS 135952, Case No. 16-20091-Cr-Williams (S.D. of Florida April 3, 2020).....................Page 14

**United States v. Griffin**, 2020 U.S. Dist. LEXIS 234425 Case No. 1:95-Cr-00751-UU-1(S.D. Fla. Dec. 8, 2020)....................................................Page 15

**United States v. Sosunov**, 2020 U.S. Dist. LEXIS 175765 17 Cr. 350 (LAP) (S.D. N.Y., Sep. 24, 2020)..........................................................................Page 15

**Pepper v. United States**, 562 U.S. 476, 490-93 (2011).......................Page 16

**In re Monschke and Bartholomew**, No. 96772-5 (Was. Mar. 11, 2021)..Page 21

**United States v. Carson**, 2021 U.S. Dist. LEXIS 1611 Case No. CR06-5059 RJB (W.D. WA. Jan. 4, 2021) .................................................................Page 25

**United States v. Quinn**, 2020 U.S. Dist. LEXIS 110247 Case No. 91-cr-00608-DLJ-1 (RS) (N.D. Cal. June 17, 2020)...........................................Page 26

**Montra Owen v. United States**, 2020 U.S. Dist. LEXIS 237901 Criminal No. 2:03-cr-197-1 (E.D. Virginia, Dec. 17, 2020)..................................Page 26

**United States v. Eric Millan**, 2020 U.S. Dist. LEXIS 59955 91-CR-685 (LAP) (S.D.N.Y, Apr. 6, 2020)................................................................Page 27

**United States v. Marks**, 2020 U.S. Dist. LEXIS 68828 03-CR-6033L (W.D.N.Y., Apr. 20, 2020)................................................................................Page 29

**United States v. Rodriguez**, 2020 U.S. Dist. LEXIS 181004 00 Cr. 761-2 (JSR)(S.D.N.Y Sep. 30, 2020)...........................................................Page 28

**United States v. Cruz**, No. 3:94-CR-112 (JCH) (2d Cir. Conn., April 9, 2021).........................................................................................Page 28

**United States v. Scott**, 2020 U.S. Dist. LEXIS 84313 Crim. No. 95-202-CCB-2 (4th Cir. Md., May, 13, 2020)..................................................Page 29

**United States v. Bryant**, 2020 U.S. Dist. LEXIS 75681 Crim. No. 95-202-CCB-3 (4th Cir. Md., Apr., 30, 2020)...................................................Page 29

### Pro-Se Statement

Abraham Fidalgo, here after "Defendant", is a pro-se litigant who is not versed in the law, therefore, he asks the this honorable Court construe his pleading "liberally" pursuant to the doctrine set forth by the United States Supreme Court in **Haines v. Kerner**, 405 U.S. 519, 30L. Ed. 2d 652, 92 S.Ct. 594 (1972).

### Request for Counsel

Defendant respectfully requests the Court to appoint counsel to help with any further litigation pertaining to this motion. Specifically, if the Government opposes defendant's request for compassionate release, defendant request authorization to file a reply brief with the Court's permission.

### Exhaustion of Administrative Remedies

Defendant has attached to this motion evidence of his exhaustion of administrative remedies through the Bureau of Prisons (B.O.P). Attached are the following:

- Response to Inmate Request to Staff received on January 22, 2021.
- Request for Administrative Remedy submitted on January 28, 2021.
- Rejection notice requiring filing directly to Central Office.
- Central Office Administrative Remedy Appeal submitted on February 9, 2021
- Rejection notice requiring re-filling to Central Office received on April, 26, 2021.
- Central Office Administrative Remedy Appeal re-submitted on May 13, 2021.

Defendant is still waiting for a response from Central Office. Over 30 days have lapse from the request as mandated by § 3582 (c) (1) (a), which was amended by the First Step Act of 2018, § 603 (b), Pub. L. 115-391 132 Stat. 5194, 5239 (Dec. 21, 2018). See attached Administrative Remedy Forms.

ARGUMENT

Due to the amendment to § 3582 (c) (1) (a) by the First Step Act, Defendant can now come directly to the court to request a reduction of his sentence. The many mitigating factors presented in this case including defendant's extraordinary and compelling family circumstances, relative youth at the time of the instant offense, the absence of any criminal history, and defendant's rehabilitation constitute extraordinary and compelling reasons that provide the Court with the power to reduce his sentence pursuant to § 3582 (c) (1) (a) (i). After balancing the § 3553 (a) factors, the Court should reduce Defendant's sentence to time served.

## I.    DEFENDANT'S    EXTRAORDINARY    AND    COMPELLING FAMILY CIRCUMSTANCES FALL WITHIN THE ADVISORY U.S.S.G § 1B.1.13 SCOPE AUTHORIZING THE COURT TO REDUCE DEFENDANT'S SENTENCE.

Defendant is well aware of the circuit split concerning U.S.S.G § 1B.1.13 application to § 3582 (c) (1) (a) (i). As of the date of this motion the 2nd, 4th, 5th, 6th, 7th, 9th, and 10th circuits have ruled that U.S.S.G § 1B.1.13 only applies to motions filed by the Director of the Bureau of Prisons. See **United States v. Brooker**, Case No.:19-3218-cr, 2020 U.S. App. LEXIS 30605 (2nd Cir. September 25, 2020) ("A sentence reduction brought about not "upon motion by the Director of the Bureau of Prisons is not a reduction under § 1b1.13"); **United States v. Jones**, Case No.: 20-3701, 2020 U.S. App. Lexis 36620 (6th Cir Nov. 20, 2020)(The 6th circuit

7

court of appeals issued a decision holding that "the passage of the First Step Act rendered 1b1.13 "inapplicable" to cases where an imprisoned person files a motion for CR (Compassionate Release)); In **United States v. Gunn**, Case No.: 20-1959, 2020 U.S. App. Lexis 36612 (7th Cir Nov. 20, 2020)(The 7th circuit notes that any decision is "consistent with" a nonexistent policy statement. "Consistent with" differs from "authorized by". Therefore, judges are free to define for themselves what constitutes an "extraordinary and compelling" reason for reduction.); **United States v. McCoy**, Case No.: 20-6821, 2020 U.S. App. Lexis 37661 (4th Cir Dec. 2, 2020)(The 4th circuit agreed with **Brooker**, **Gunn**, and **Jones** that 1B1.13 because it refers only to CR (Compassionate Release) motions filed by the BOP is not "applicable policy structured" within the meaning of the statue, and thus may be ignored.); **United States vs. Maumau**, 2020 U.S. Dist. LEXIS 28392 Case No. 2:08-cr-00758-TC-11(D. Utah, February 18, 2020) (The court went on to hold that the Sentencing commission's existing policy statement is applicable only to motions filed by the director of the BOP, and not to motions filed directly by defendants. In doing this the court joined the Second, Fourth, Sixth and Seventh Circuits.); **United States vs. Arruda**, Case No.: 20-10245, 2021 US App. LEXIS 10119 (9th Cir. Apr. 8, 2021) (the Ninth Circuit noted that five other circuits unanimously held that U.S.S.G. § 1b1.13 only applies to 3582 (c) (1) (A) motions file by the BOP director and does not apply to motions filed by a defendant.).

Most recently, in **United States vs. Shkambi**, Case No.: 20-40543, 2021 US App. LEXIS 10053 (5TH Cir. Apr. 7, 2021) (The fifth circuit held that the district court erred in binding themselves to the old 1B1.13 statement. In holding that the district court erred, the fifth circuit stated that "First, the text of § 1B1.13 says it only applies to 'motions[s] of the Director of Bureau of Prisons'. When congress enacted the FSA in December of 2018, it gave prisoners authority to file their own motions for compassionate release; but it did not strip the BOP of authority to

8

continue filing such motions on behalf of its inmates. So the policy statement
continues to govern where it says it governs on the 'motion of the Director of the
Bureau of Prisons' U.S.S.G. § 1b1.13. But does not govern here on the newly
authorized motion of a prisoner." Second, the text of the commentary confirms the
limited applicability of U.S.S.G. § 1b1.13. Application not 4 of the commentary
makes clear that a 'reduction under this policy statement may be granted only upon
a motion by the Director of the Bureau of Prisons.' That note expressly limits the
policy statement's applicability to motions filed by the BOP. Third, the district
court cannot rely on pieces of text in an otherwise inapplicable policy statement.
It's true that application note 1 defines "extraordinary and compelling reasons" by
articulating four categories of reasons that could warrant a sentence reduction. But
this "text may not be divorced from context." And the context of the policy
statement shows that it applies only to motions filed by the BOP. Just as the district
court cannot rely on a money-laundering guideline in a murder case, it cannot rely
on the BOP-specific policy statement when considering a non-BOP § 3582
motion.").

Only the 11th Circuit in **United States v. Bryant**, Case No.:19-14267, in a 2-1
decision determined that U.S.S.G. § 1b1.13 is an applicable policy statement that
applies to compassionate release motions brought by incarcerated persons.

In **Bryant** the court also reviewed Application Note 1(D) and determined that it
does not conflict with § 3582 (c) (1) (A) by stating:

**"Application Note 1(D) does not conflict with Section 3582 (c) (1) (a). The
FSA's only change was to allow for defendant-filed reduction motions.
Nothing in Application Note 1(D) stops a defendant from filing a Section 3582
(c) (1) (a) motion. The BOP can also take a position on a defendant-filed
motion, so Application Note 1 (D) has a field of application there as well**

because this Court can give effect to the amended Section 3582 (c) (1) (a) and the unamended Application Note 1(D) at the same time, the Court must do so."

The Court noted that **Bryant's** motion did not fall within any of the reasons that 1b1.13 identifies as "extraordinary and compelling []" and notes that the district court correctly denied his motion for a reduction in sentence.

Clearly there exists a Circuit split. The Supreme Court will have to address this issue in the future. However, Defendant asserts that his motion is within the scope of 1b1.13 under the criteria of (C) Family Circumstance (ii) or Application Note 1(D) Other Reasons or both.

## A. Defendant's Extraordinary and Compelling Family Circumstances.

### 1. Incapacitation of Parents.

Defendant's circumstances are not based on the natural aging process of his parents. Regrettably, Defendant's family circumstances have taken a turn for the worst. Defendant's mother is 78 years old and has recently been diagnosed with cancer. She is currently receiving treatment for breast cancer. She is very ill and weak. The treatment for the breast cancer has weakened her immune system leaving her susceptible to contracting a virus. In addition, she suffers from re-occurring vertigo attacks and extreme carpal tunnel syndrome. It is unknown if the treatment will cure her of cancer.

Defendant's father is 81 years old. He is not fluent in the English language. He had a triple bypass heart surgery which has affected his mobility and strength. This renders him incapable of care-taking someone who is receiving treatment for cancer. He also suffers from diabetes, hypertension, chronic kidney disease, obesity, and other ailments. See Medical Records for Rafael Fidalgo.

Both of defendant's parents are in need of care. They need assistance with personal care. They need someone to do all the errands like groceries, medication, and medical appointments. In addition, they need help with the day to day care of maintaining a home. They are on a fixed income and due to the increase in medical bills defendant would provide much needed financial support.

Defendant's mother is receiving treatment for Ductal Carcinoma (DCIS) at Advent Health Hospital located in Carrollwood, Tampa, Florida. DCIS is cancer in the breast. Her doctors are Dr. Guillermo Castellvi, Dr. Jack R. Steel, and Dr. Yasir Alhassani. See Medical Records for Emma Fidalgo.

## 2. Defendant Is The Only Available Caretaker.

If released, defendant would be their sole essential care-taker. Defendant has no siblings that live near his parents. Defendant has three siblings none of which live in Tampa FL.

Louis Davila is the oldest sibling. He lives in 149 N.E. 10th St., Boca Raton, FL 33432 which is 5 hours from 13928 Henson Circle, Tampa, FL 33625 where defendant's parents live. He has lived there for years and refuses to move in with his parents.

Anthony Davila is the second oldest sibling. He has no contact with the Family and lives somewhere in the state of Georgia. His address is unknown.

The third sibling is Alexander Fidalgo whom lives at 5 Plantation St Apt.1, Worcester, MA 01604. Not only does he live up north in the state of Massachusetts, he has his own family that needs care and will not move to Tampa FL.

There is no other family member available. Since none of Defendant's siblings are willing to move in with his parents that leaves the defendant as the only viable care taker for his parents.

All this can be verified through the United States Probation Office. The United States Probation Office can conduct an investigation of the parent's premises and verify the sibling's addresses.

**B. U.S.S.G. § 1b1.13 Is Advisory and Not Binding Therefore the Sentencing Court Has Discretion on its Application of Application Notes 1(C) Family Circumstance (ii) and Application Notes 1(D) Other Reasons.**

The Supreme Court in **United States V. Booker**, 543 U.S. 221 (2005), rendered the guidelines advisory in nature. In **Booker**, the Court held that the imposition of an enhanced sentence under the federal sentencing guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant violated the Sixth Amendment. The Court reasoned that an advisory guideline system, while lacking the mandatory features that Congress enacted, retains other features that help to further congressional objectives, including providing certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities, and maintaining sufficient flexibility to permit individualized sentences when warranted. District courts are required to properly calculate and consider the guidelines when sentencing, even in an advisory guideline system. See 18 U.S.C § 3553 (a)(4), (a)(5); **Booker**, 543 U.S. at 264("The district courts, while not bound to apply the Guidelines, must…take them into account when sentencing."); **Rita v. United States**, 551 U.S. 338 (2007) at 351(stating that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range); **Gall v. United States**, 552 U.S. 38, 49, (2007) ("As a matter of administration and to secure nationwide consistency, the Guideline should be the starting point and the initial benchmark.").

To put this in perspective, the advisory U.S.S.G. § 1b1.13 is the starting point when considering a 3582 (c) (1) (a) (i) motions for extraordinary and compelling reasons. However, it is not the final destination. There is flexibility to permit individualized sentences when warranted.

Under the advisory U.S.S.G. § 1b1.13 Application Notes 1(C) Family Circumstances, there is two criteria's:

      **(i)**      **The death or incapacitation of the caregiver of the defendant's minor child or minor children.**

      **(ii)**      **The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.**

Defendant's family circumstances fall within the advisory U.S.S.G. § 1b1.13 Application Notes 1(C) Family Circumstances (ii). The fact that the family member in need of a caregiver is not his spouse or registered partner should not discount defendant's circumstances.

However, if the Court should not agreed there is still another option. Under the advisory U.S.S.G. § 1b1.13 Application Notes 1(D) Other Reasons states:

**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).**

Defendant has submitted his request to the Director of the Bureau of Prisons. Thirty days have lapse since that request was submitted. Failure to respond to the request relinquishes the authority of the Director of the Bureau of Prisons and delegates' jurisdiction to the district court. As the 11th Circuit stated in **Bryant**, "[] this Court can give effect to the amended Section 3582 (c) (1) (a) and the unamended Application Note 1(D) at the same time, the Court must do so." See **United States v. Bryant,** Case No.:19-14267.

13

Defendant's extraordinary and compelling family circumstances combined with his relative youth at the time of the instant offense, the absence of any criminal history, and defendant's rehabilitation, authorizes this Court to grant defendant's motion under the advisory U.S.S.G. § 1b1.13 Application Notes 1(D) Other Reasons.

## C. Incapacitated Family Member Can Include Spouse, Partner, Mother, Father, Sibling, or More Than One Incapacitated Family Member.

Defendant's motion is not the first time this type of family circumstances has been brought under a § 3582 (c) (1) (a) (i). Other circuits have already granted compassionate release for similar reasons as the defendant. See **United States v. Walker**, Case No.: 1:11 CR 270, 2019 U.S. Dist. Lexis 180084 (N.D. Ohio Oct. 17, 2019)("In addition to his history and his record of incarceration, Mr. Walker cites his desire to aid his terminally ill mother, both emotionally and financially, as his main reason for seeking immediate release.");(**United States v. Riley**, Case No.: 2:12-cr-62, 2020 U.S. Dist. Lexis 82909 (D. Vermont May 12, 2020)("Riley's first motion, filed in January 2020, seeks release on the grounds that his elderly father is in failing health, requires daily care, and none of his siblings can provide that care.");( **United States v. Martinez**, 2020 U.S. Dist. LEXIS 167652 No. 06 Cr. 591 (LAP) (S.D.N.Y Sept. 13, 2020) ("Mr. Martinez's situation is not within the strict confines of section 1b1.13 of the guidelines" in as Mr. Martinez explained, his sister has been fighting cancer for some ten years but currently needs assistance with the most basic tasks, such as eating and bathing").

The **11th Circuit** has also granted compassionate release due to family circumstances similar to the defendant. See **United States v. Bartolo Hernandez**, 2020 U.S. Dist. LEXIS 135952, Case No. 16-20091-Cr-Williams (S.D. of Florida April 3, 2020)("Because of the Coronavirus pandemic, defendant is currently the

14

only potential caregiver for his 84-year old mother"; "[needs ] grocery shopping, pharmacy pickups, and regular medical appointments"); (**United States v. Marvin Griffin**, 2020 U.S. Dist. LEXIS 234425 Case No. 1:95-Cr-00751-UU-1(S.D. Fla. Dec. 8, 2020)("Defendant's family circumstances are similar to those specifically articulated by the Sentencing Commission as "extraordinary and compelling," and the Court will not discount the situation merely because defendant's sister as oppose to spouse or partner is the ill family member").

Like **Hernandez** and **Griffin**, the fact that defendant's mother and father are the ill family members as oppose to a spouse should not barred defendant from seeking compassionate release under the advisory U.S.S.G. § 1b1.13 Application Notes 1(C) Family Circumstances (ii).

### D. Unforeseen Pandemic Further Impacts Family Circumstances.

Due to this unprecedented time cause by COVID-19, more district courts are taking into consideration the different family circumstances defendants may have when granting compassionate release. See **United States v. Sosunov**, 2020 U.S. Dist. LEXIS 175765 17 Cr. 350 (LAP) (S.D. N.Y., Sep. 24, 2020) ("The gov't is correct that Mr. Sosunov does not fit into the normal "family circumstances" guideline because he does not face the death or incapacitation of the caregiver of his minor child or the incapacitation of his spouse when he is the only caregiver. Here, however, the confluence of circumstances brought about by the extreme care-giving needs of his family and the Covid-19 virus and the risk it presents to his family constitutes "extraordinary and compelling circumstances warranty release"; "Mr. Sosunov's lack of criminal history, his good behavior while incarcerated, and his success in the RDAP program persuade the court that Mr. Sosunov is not a danger to the community")

Like in **Sosunov,** defendant is the only care-giver for his parents. Furthermore, the defendant has no criminal history, over two decades of good behavior, and participated successfully in the SKILLS program for over ten years.

Although this is not a novel situation, however, when it is combined with a world wide pandemic, parents in extreme need of a caretaker, and a defendant that has completed almost 25 years of his sentence with clear conduct, there exists enough evidence of extraordinary and compelling circumstances for the court to grant defendant's motion.

## II.   THE § 3553 (A) FACTORS WEIGH IN FAVOR OF DEFENDANT'S IMMEDIATE RELEASE AND UNLIKELINESS OF RECIDIVISM.

Two and a half decades in custody have shed new light on the§ 3553 (a) analysis. Under **Pepper v. United States**, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553 (a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." Id. at 492.

After considering all of the circumstances in this case, this Court should conclude that the nearly 25 years that the Defendant has already served, the equivalent of an approximately 28-year sentence after accounting for good-time credit, is more than sufficient to satisfy the purpose of sentencing.

### A. History and Characteristics of the Defendant and the Need for Specific Deterrence.

### 1. No Criminal Record

The defendant is a first time offender. The lack of any criminal history or violence prior to the offense should be taken into consideration. Most offenders

16

with similar offenses as the defendant have extensive criminal history, affiliations with gangs, and drugs crimes. On the contrary, in 1996 defendant just received his high school diploma and was preparing to start his first semester in Hillsborough Community College (HCC) in Tampa FL. See High School Diploma dated 1996.

### 2. Defendant's Excellent B.O.P Record

Today, Defendant is not the same young man who appeared before the Court for sentencing almost two and a half decades ago. At age 45, Defendant accepts responsibility for his prior mistakes and fully appreciates, and lives each day with, the repercussions of his actions, including that he lost precious time with his mother who suffers from cancer. Defendant's sincere remorse for his actions is best demonstrated by his exemplary institutional record in the Bureau of Prisons. He has maintained a perfect disciplinary record for over twenty years.

### 3. Programming

Defendant has completed an impressive array of educational and vocational programming. See Inmate B.O.P Program Review. While participating in a wide range of programming, the defendant has worked tirelessly as a mental health companion and tutor in the Skills Program, positions he has held for a decade. Dr. Benitez, the Skills Program Coordinator, explains that the Skills Program is a "Residential Mental Health Treatment Program for inmates with significant [impairments in] mental health, cognitive and/or intellectual functioning." Dr. Benitez commends the Defendant's dedication to the program, writing:

**"He is a good role model to other inmates and implements the philosophy and methodology of the program on a daily basis. Inmate is respected by both staff and other inmates due to his pro-social values and respectful manner. Additionally Inmate was a member of the Skill Program Mediation Team for two consecutive years, from 2017-2018. The team is composed by MH**

Companions with the goal to resolve conflict between inmates to prevent an institutional and/or program safety and security issues."

The fact that the SKILLS PROGRAM is court ordered to certain offenders as part of their sentence demonstrates the importance and success of this program.

### 4. Court Order Restitution and Financial Responsibility

Defendant has abided by the court order to pay restitution during his entire incarceration. Defendant has paid over $41,000.00 of the $97,000.00 owed in restitution. The defendant works as a clerk for the Unicor Program for over 15 years. With the training and recommendations the defendant has received as a data entry clerk, attaining employment in this field is feasible. Many former employees of Unicor have assured the defendant employment at their company upon release.

It has been proven that participation of the Unicor program reduces the chances of recidivism. The Unicor mission statement states:

**"The mission of Federal Prison Industries, Inc. (FPI) is to protect society and reduce crime by preparing inmates for successful reentry through job training."**

The court should take into consideration a defendant that has maintained employment for over 15years at the Unicor Program while complying with his restitution responsibilities. This demonstrates defendant's reliability to maintain employment in a real-world environment and financial responsibility.

As a clerk, defendant is trusted with the most sensitive jobs. Defendant is responsible for maintaining spreadsheets dealing with millions of dollars for the Social Security Furniture Department. As the FPI mission statement states, defendant's release to society and risk of recidivism is unlikely due to the training and preparation he has received while incarcerated.

In addition, releasing the Defendant under Compassionate Release would allow him to pay the remainder of his restitution in a shorter period of time.

18

### 5. Staff Recommendations

Through the years, defendant has earned several recommendations from his supervisors. As stated below:

**"Mr. Fidalgo has shown a high degree of professionalism and work ethic in his role as a Project Management Clerk working for the Federal Prison Industries (Unicor)." "He is a problem solver always willing and ready to share his expertise with others around him."**

Mr. Norman Reid, Project Management Supervisor. See attached Staff recommendation.

**"Inmate Fidalgo has worked as a data entry clerk in Unicor for over 15 years. He is currently the lead clerk for the Social Security Administration (SSA) in the Task Order Group (TOG) assisting with loading orders, reviewing quotes, installation bids and many other Office Furniture group task." "His overall knowledge and expertise is a great asset to the TOG. Inmate Fidalgo works well with other inmates and staff." "He has a positive attitude toward staff and inmate."**

Jennifer Telfare, Chief Project Management Supervisor. See attached Staff recommendation.

The defendant's exceptional institutional record is a testament to the remorseful and peaceful 45-year-old man he has become and is a strong predictor of how he will perform under supervised released if his 60-year sentence is reduced.

### 6. Defendant's Support Network for His Re-Entry

In addition to his relentless pursuit for self-improvement, defendant has maintained a close relationship with parents. Upon his release, as their sole caretaker, defendant plans to live with his parents at their home in Tampa, FL. With the training he has received while incarcerated, he intends to work as a data

entry-clerk immediately to help with the financial difficulties the pandemic has place on his family. Preferably, he will be able to work directly from his parent's home via computer. This re-entry plan will make his transition as a productive member of society more effectively.

At the defendant's sentencing in 1997, it may have been difficult to predict how he would conduct himself 10, 20, or more years in the future. Today, however, the Court does not need to wonder. Defendant, by participating in meaningful programming, serving others as a mental health companion and tutor, and maintaining a perfect disciplinary record for over 20 years, has shown that he is prepared to conduct himself squarely within the confines of the law upon his release from prison.

Defendant's exemplary conduct in the Bureau of Prisons and his efforts to prepare for his re-entry show that further incarceration is unnecessary to provide specific deterrence and that his release would not pose a danger to the public.

Indeed, the Bureau of Prisons has categorized defendant with a "LOW" risk category for recidivism. A "LOW" pattern score, indicates he has a minimum risk of recidivism, See Department Of Justice Announces Enhancements To The Risk Assessment System And Updates On First Step Act Implementation, Dep't Of Justice (Jan 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (recognizing that the Prisoner Assessment Tool Targeting Estimated Risk And Need ("PATTERN") is designed to measure risk of recidivism of inmates").

## B. Nature and Circumstances of the Offense and the Need for Just Punishment.

### 1. Age At The Time Of Offense

Defendant was 20 years old when he committed his crime. Due to the increase in scientific understanding of adolescent brain development and legislative developments in the legal treatment of individuals in late adolescence, the age of a defendant now has more weight when considering a just punishment. This new science was not available to the court in 1996. In support consider **In re Pers. Restraint of Monschke and Bartholomew**, No. 96772-5 (Was. Mar. 11, 2021), the Supreme Court of Washington extended the reach of the U.S. Supreme Court's **Miller** ruling by declaring mandatory LWOP for those under 21 to be unconstitutional (pursuant to Washington's state constitutional prohibition of "cruel punishment"). In its opinion the Court stated:

**"Dwayne Earl Bartholomew and Kurtis William Monschke were each convicted of aggravated first degree murder and sentence to life in prison with out possibility of parole. RCW 10.95.030. Bartholomew was 20 years old; Monschke was 19. Many years after their convictions each filed a Personal Restraint Petition (PRP) asking us to consider whether Article I, Section 14 of our state constitution or the Eight Amendment to the United States Constitution permits a mandatory life with out parole (LWOP) sentence for youthful defenders like themselves. Modern social science, our precedent, and a long history of arbitrary line drawing have all shown that no clear line exists between childhood and adulthood."**

Defendant acknowledges that he does not have a life sentence. However, a 60-year sentence can be considered a de facto life sentence. Defendant would be 72 years old when release. That is only 3 years off the normal life expectancy of a healthy human male.

Defendant is not suggesting that he is absolved of guilt due to his age. However, when you take into consideration the circumstances of the defendant at the time, an evaluation should have been ordered. The defendant was a first time offender with no criminal record. Defendant was not a member of any gang or criminal organization. In contrast, Defendant was part of a circle of friends (teenagers) who knew each other for years through their church. Defendant attained his high school diploma and was registering to start his first semester at the Hillsborough Community College in Tampa, FL at the time of his arrest. Defendant was not a career criminal in and out of system. Clearly this aberrant behavior was inconsistent with the way defendant lived.

## 2. Defendant's Role On The Offense

When addressing the factors set forth in § 3553 (A), defendant recognizes that the serious bodily injury enhancement has significant weight with the Court when making a determination. Based on the testimony of the government's witnesses at trial, defendant was given a four level enhancement for serious bodily injury. Due to defendant's position from the onset to plead guilty, defendant's counsel did not challenge any of the bank witnesses' testimony. At trial, the government's witnesses testified that the defendant physically grabbed hold of them causing serious bodily injury. The same government's witnesses also testified that the defendant had a handgun in each hand. In addition, the defendant also carried a duffel bag in his left hand along with a gun. The defendant could not have grabbed hold of anyone as his hands were occupied at all times. The government's witnesses also testified that other co-defendants were at the same area at one point. All of the defendants had flannel shirts and mask. In an intense situation like a bank robbery, perceptions can be distorted. Trial council could have challenged the testimony. However, defense council did not because defendant's inclination to plea guilty. Defendant explained to the United States Probation Officer when he

22

was interviewed that he did not touch anyone due to his hands being occupied with two guns and a duffle bag. The United States Probation Officer agreed with the defendant that more evidence should be provided to substantiate a four level enhancement for serious bodily injury. See (P.S.I) Pre-Sentencing Report.[1]

At sentencing the government provided certain papers dated well after the bank robbery but just prior to sentencing that was entered into evidence. The defense did not have time to verify or refute this evidence. This evidence was never introduced at trial.

Defendant is not challenging any evidence or testimony here. Defendant merely wanted to inform the Court that certain facts were omitted or not challenged due to defendant's willingness to plead guilty. More important, there was no need to make matters worse by further distressing the victims at trial by challenging their testimony.

Defendant is not in any way or form minimizing his actions during the offense. Defendant is guilty of being an organizer, leader, and enforcer. He accepts without any exceptions complete responsibility for his role in the offense. Defendant is very remorseful and ashamed for the way he conducted himself. He understands that someone could have been shot or worse. Defendant also acknowledges that his aggressive behavior had an extreme psychological effect on the victims. These are facts that Defendant has lived with and will never forget. Defendant has dedicated his life in making amends for his mistakes by helping other inmates. For over two decades defendant has endeavor to understand what

---

[1]**Due to B.O.P policy inmates are not allowed to have certain papers pertaining to their case such as a Pre-Sentencing Report (PSR). Such papers are confiscated.**

lead him to commit the offense, to seek help for it, and to become a humble man incapable of committing such a crime again. In doing so, defendant has assisted other prisoners to recognize their mistakes, to take accountability, and seek help.

### 3. Need for Just Punishment

While Defendant's conduct was no doubt extremely serious, the 60-year sentence he received for going to trial was unduly punitive. The mandatory stacking at the time (30-years), pressed defendant to trial. A time-served sentence–which is the approximate equivalent of a 28-year sentence after accounting for good-time credit–remains an extremely serious sanction. Indeed, it is commensurate with what people routinely receive today for substantially more serious conduct.

## C. Need to Avoid Unwarranted Sentence Disparities

The court should consider the sentences imposed on others in similar circumstances in order to avoid unwarranted sentencing disparity. Defendant's sentence far exceeds what defendants convicted of murder receive today. See U.S.Sent'g Comm'n, 2017 Sourcebook of Federal Sentencing Statistics, table 14 (stating that the average prison sentence imposed nationally for murder in federal court is approximately 18.1 years for all offenders and that, for first-time offenders, the average sentence is even lower, about 15.6 years).[2]

Even if the Court reduced the defendant's sentence to time served, his sentence would still be at or near the sentences imposed in some of the most serious cases being heard by judges today.

---

[2]Available at https://www.ussc.gov/sites/defualt/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table14.pdf.

**1. Comparable Cases With Similar § 3553 (A) Factors As The Defendant In Which The District Court Granted Compassionate Release.**

The following cases have different extraordinary and compelling reasons that were use in combination with the § 3553 (A) Factors to grant compassionate release. Nevertheless, the § 3553 (A) Factors are similar to the defendant. In some cases the § 3553 (A) Factors favor more the defendant. See for example **United States v. Carson**, 2021 U.S. Dist. LEXIS 1611 Case No. CR06-5059 RJB (W.D. WA. Jan. 4, 2021) (Mr. Carson is a 45 year old who was sentenced to 360 months for serious drug and firearms charges. He has severed 15 years. His 3582 motion "alleges issues regarding his sentence, exemplary rehabilitation, his mothers need for a care taker." Mr. Carson's "prison record is exemplary, with no disciplinary violations, many classes and program being completed, service to fellow inmates through the suicide companion program.").

The Court after taking into consideration the § 3553 (A) Factors stated: **"The defendant's crimes, and full criminal history, justified a long prison sentence in order to protect the public. The question before the court is whether his characteristics have change for the better during his already long incarceration. It appears to the court that he is a different man now then he was in 2006." "Further incarceration would serve no purpose for defendant or public. The court find that defendant is safe to be at large and poses no danger to any individual or public, provide that he follows his release plan and the requirement of his term of supervise release and the condition thereof."**

One of the reasons Mr. Carson filed for compassionate release was to take care of his mother. When compared to defendant's § 3553 (A) factors, defendant has served almost a decade more than Mr. Carson, over 20 years of exemplary

prison record, and completed the same Suicide Companion Program. Unlike Mr. Carson, defendant has no criminal history.

In **United States v. Quinn**, 2020 U.S. Dist. LEXIS 110247 Case No. 91-cr-00608-DLJ-1 (RS) (N.D. Cal. June 17, 2020)("In September 1991, Quinn committed two armed bank robberies in the Bay Area within two weeks of one another. At one point during the second robbery, Quinn struck a teller in the head with his handgun, demanding she move with greater urgency"). In **Quinn**, after a jury conviction the Court sentence Mr. Quinn to 47 years. Mr. Quinn has served 28 years of his sentence. In determining the 3553 (a) factors the Court stated:

 **"Quinn does have a troubling criminal history, with serious, violent crimes prior to the two armed robberies discussed above." "However, Quinn committed the bulk of these acts when he was under 20 years of age." "More recently, Quinn has apparently shown himself to be a model inmate over his 28 years in prison. Quinn has not engaged in any violent conduct. He has only had six infractions since 2004, and none in the last three years."**

In comparison to **Quinn**, the 3553 (a) factors favor defendant which has no violent history prior to the current offense and no infractions in over 20 years.

In **Montra Owen v. United States**, 2020 U.S. Dist. LEXIS 237901 Criminal No. 2:03-cr-197-1 (E.D. Virginia, Dec. 17, 2020) ("[defendant] committed 29 armed robberies;" "Petitioner was the leader of a group of six co-conspirators;" "Sentenced to 420 months;" "sentence at just 22 years old;" "petitioner's relative youth at the time of the sentence, the overall length of the sentence; the disparity between his sentence and those sentenced for similar crimes after the First Step Act and his rehabilitative efforts form an extraordinary and compelling basis for relief."). In **Owen**, the petitioner was 22 years old and was assessed leadership role just like the defendant.

Even a defendant with "King Ping" status has been granted compassionate release. See **United States v. Millan**, 2020 U.S. Dist. LEXIS 59955 91-CR-685 (LAP) (S.D.N.Y, Apr. 6, 2020) ("Mr. Millan was "at the top of the pyramid, "that is, he was the "proprietor and leader of the Blue Thunder organization." He delegated day-to-day responsibility for its operations to three lieutenants…" "In total the Probation Department estimated that the "Blue Thunder" organization trafficked in 501.28 kilograms of heroin from in or about 1986 to August 1, 1992." "He was a leader of large-scale narcotics distribution organization, a most serious crime. Nevertheless, almost thirty years is a long time behind bars by any measure for anyone." "Mr. Millan is no longer the immature and irresponsible young man who committed his offenses in his early 20s.").

If Mr. Millan, a man convicted of flooding his community with heroin, can be rehabilitated and given an opportunity for release, how much more it supports defendant's request for compassionate release.

A defendant affiliated to a gang has received a compassionate release. See **United States v. Marks**, 2020 U.S. Dist. LEXIS 68828 03-CR-6033L (W.D.N.Y., Apr. 20, 2020) ("In 2006, defendant Chad Marks was convicted after a jury trial on various chargers involving drug and firearms offenses." "The Government also contends that Mark's criminal behavior has continued during his imprisonment." "It appears that Marks was charged and disciplined in connection with fights involving him and other inmates in 2008, 2009, 2010, and that in 2013 he was found guilty of bribing a staff member." "Aside from those incidents, the Government contends that during his incarceration, Marks has been a member of the "Dirty White Boys", which the Government describes as a "prison gang that espouses racist views and opinions."). After an oral hearing for determination of his compassionate release, the Court stated:

**"I find that if released, Marks would not pose a danger to the safety of any other person or to the community. The Court has no crystal ball with which to foresee the future, but that is not what is required. If it were, few if any defendants would ever be granted relief, and that is not Congress' intent. Considering all the evidence, the Court must make an independent determination, and in this case, given Marks's clean disciplinary record for many years past, and his demonstrably successful efforts at rehabilitation, I conclude that upon release, he will not pose a danger to the community".**

In **Marks**, the defendant had an extensive disciplinary record along with ties to a violent prison gang. In complete contrast, Defendant has over 20 years of clean disciplinary record and no history of any affiliation with any gang or organization.

Murder is considered the worst of all offenses. Even defendants serving a life sentences for murder were granted compassionate release. See **United States v. Rodriguez**, 2020 U.S. Dist. LEXIS 181004 00 Cr. 761-2 (JSR) (S.D.N.Y Sep. 30, 2020) ("Defendant participated in a brutal murder of a government informant." "The Court fined that Rodriguez's obesity and Type II diabetes constitute an extraordinary and compelling reason to modify his sentence." "The Court concludes that Rodriguez sentence should be reduced to 30 years imprisonment, to be followed by a lifetime of supervise release."). Although Rodriguez's extraordinary and compelling reasons for compassionate release was due to Covid-19 and his health, his 3553 (a) factors satisfied the Court enough to conclude that he no longer posed to threat to society. See **United States v. Cruz**, Case No.: 3:94-CR-112 (JCH), ("Nearly twenty-seven years ago, an eighteen-year-old Luis Noel Cruz ("Cruz") murdered two young men in Bridgeport, Connecticut. For these and other crimes he was convicted by jury and sentenced to life in prison without the possibility of parole. Now 45, years-old, Cruz has effectively served almost 31

years of that life sentence. Cruz has taken more than 60 classes since 1997, including courses on parenting, self-esteem, public speaking, business, and finance."). In **Rodriguez,** the defendant brutally tortured and murdered a government informant. In **Cruz**, the defendant committed two murders a point blank range. However, both defendants were found to have been rehabilitated enough to not be a threat to the community. Clearly the 3553 (a) factors favor the Defendant more than in **Rodriguez** or **Cruz**.

Lastly, defendant asks the Court to consider these last two cases. The first one is **United States v. Scott**, 2020 U.S. Dist. LEXIS 84313 Crim. No. 95-202-CCB-2 (4th Cir. Md., May, 13, 2020)("With respect to Scott's personal history and characteristics, the Court notes that Scott was relatively young-23 years old-and had no criminal record when he agreed to participate in the bank robberies. The Court also places significant weight on Scott's post-sentencing conduct, which "provides the most up to date picture of his history and characteristics." "Scott has maintained a near-perfect disciplinary record; his only infraction over the course of his incarceration was over 24 years ago." "Scott has served as a facilitator in a mentorship program and as an inmate suicide watch companion, a position for which he was selected and trained by BOP staff." "The court believes that the 25 years in prison Scott has already served adequately reflect the seriousness of his conduct and recognize the need for deterrence, public safety, and respect for the law.").

The second and  last case is **United States v. Bryant**, 2020 U.S. Dist. LEXIS 75681 Crim. No. 95-202-CCB-3 (4th Cir. Md., Apr., 30, 2020)("With respect to Bryant's personal history and characteristics, the court notes that Bryant was relatively young-24 years old-and had a minimal criminal record when he agreed to participate in the bank robberies." "Bryant has also served as a mental health companion and tutor in the Skills Program, a "Residential Mental Health

Treatment Program for inmates with significant impairments in mental health, cognitive and/or intellectual functioning." "The Skills Program Coordinator, Dr. Benitez, has described Bryant as "a positive role model" who is "reliable, "non-aggressive," and "respected by both staff and other inmates.").

These cases specifically have similar 3553 (a) factors as Defendant's case. Like in **Scott**, Defendant has also served as a facilitator in a mentorship program and as an Inmate Suicide Watch Companion. Mr. Bryant and the Defendant were in the Skills Program at the same time including the same housing unit. As aforementioned, Defendant received recommendations from the same Skills Program Coordinator Dr. Benitez. See attachments.

Both of these defendants had robbery just like the Defendant. Their 3553 (a) factors were almost identical. The Courts felt that neither pose a danger to the community if release. All of these cases may have different predicate offenses, some worst than the defendant's. They may also have different extraordinary and compelling circumstances. However; the 3553 (a) factors are very similar or more in favor of the Defendant.

## D. Need to Promote Respect for the law and Afford General Deterrence

The fact that the government has repeatedly recommended sentences substantially less than 60 years for defendants with just as serious (or more serious) conduct show that the 60-year sentence Defendant received is overly punitive. A time-served sentence continues to send a strong message of deterrence to anyone considering engaging in the same conduct that led to Defendant's convictions.

Congress amended § 3582 (c) (1) (a) (i) in order to expand the use of compassionate release, which, the Department of Justice has recognized, has been underutilized by the Bureau of Prisons. The very title of the First Step Act's amendments to § 3582 (c) makes plain what Congress was trying to accomplish: "Increasing the Use and Transparency of Compassionate Release." It promotes

respect for the law to honor the legislative intent of Congress and to give Defendant, who has done absolutely everything in his power to make amends for his past actions, a second chance.

## Conclusion

At age 45, Defendant has served nearly 25 years of his sentence, yet his release date is still decades away in February 2048. The extraordinary and compelling family circumstances, his relative youth at the time of the instant offense, the kinds of sentences imposed on equally or more culpable defendants today, no criminal history, and Defendant's post-offense rehabilitation, constitute "extraordinary and compelling reasons" to reduce his sentence.

Defendant respectfully request a reduce/modified sentence of:

- Time served with the original five years supervise release in tacked;
- Or the remaining 26.7 years of his sentence on supervise release with the original five years supervise release in tacked;
- Or the remaining 26.7 years of his sentence on supervise release until the life expectancy of both parents whom are 78 years old and 81 years old. After which, if the Government or the Court determine defendant should complete the remaining sentence in custody of the B.O.P, defendant will surrender to U.S. Probation Office.

For the foregoing reasons, Defendant respectfully request that the Court grant his motion for a reduction/modified sentence pursuant to § 3582 (c) (1) (a) (i).

Respectfully Submitted,

Abraham Fidalgo, Pro-se

6/14/21
Date

31

## Certificate of service

I hereby certify that a true and correct copy of the foregoing motion has been sent via the United States Postal Service on this _14_ day of June, 2021, to the following party:

Sam M. Gibbons United States Courthouse
Office of the Clerk
801 North Florida Avenue
Tampa, Florida 33602

United States Attorney Office
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602

Abraham Fidalgo, Pro-se
_6-14-21_
Date

32